**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Courtney Price, individually, and in her official capacity and next best friend of her son W. P., | : |
| *Plaintiffs* | : |
| v. | : |
| Lorain County Board of Commissioners, | : Case No. 1:25-cv-2114 |
| and | : |
| Lorain County Sheriff, Jack M. Hall, | : Judge Pamela A. Barker |
| and | : |
| Philip R. Stammitti, | : Magistrate |
| and | : |
| John/Jane Smith (1-30), | : |
| Any Sheriff Deputies and law enforcement personnel employed by Defendant, Lorain County Sheriff, Jack M. Hall, involved in the investigation, criminal process, or prosecution of Courtney Price, | : ***Jury Demand Endorsed Hereon*** |
| *Defendants* | : |

**PLAINTIFFS' COMPLAINT**

Plaintiffs, complaining of Defendants, allege as follows:

**PARTIES**

1. Plaintiff, Courtney Price ("Courtney") is a citizen of the United States and resided in Elyria, Ohio, at all relevant times.

2. Plaintiff, Courtney Price is also a party in her official capacity and next best friend of her son, Plaintiff, W. P., who is a minor and three years of age. W. P. is a United States citizen

and resided in Elyria, Ohio, at all relevant times.

3. Defendant, Lorain County Board of Commissioners ("Commissioners"), is an Ohio Political Subdivision.

4. Defendant, Lorain County Sheriff Jack M. Hall ("Hall"), is a United States citizen and the duly-elected Sheriff of Lorain County.

5. Defendant, Philip R. Stammitti ("Stammitti"), is a United States citizen and was the former Sheriff of Lorain County at all relevant times.

6. Regarding Defendants, John and Jane Smith (1-30) (collectively "Lorain County law enforcement personnel"), Plaintiffs have diligently attempted to identify all of those persons who were involved in the conduct set forth in this Complaint. However, Plaintiffs have been unable to ascertain all of their identities at the time of filing this Complaint. When they are identified, their names will be substituted for the John and Jane Smiths at the soonest opportunity.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983, the First Amendment to the United States Constitution, and Ohio state law.

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

9. Pursuant to 28 U.S.C. § 1391, venue is properly laid in the Northern District of Ohio, Eastern Division at Cleveland, since Defendants reside and/or are located in Lorain County, Ohio. Additionally, the events and omissions giving rise to the claims occurred in Lorain County.

## FACTS

10. In early January 2024, Plaintiffs, Courtney and W. P., were residing with Courtney's aunt, Redia Jennings, at 331 Parmely Avenue, Elyria, Ohio ("premises"). Redia invited Courtney

to live with her since W. P. was about to be admitted to University Hospitals Rainbow Babies & Children's Hospital for emergency medical care.

11. On January 10, 2024, at approximately 1:30 PM, City of Elyria law enforcement personnel, including (but not limited to) police officers, detectives, SWAT and paramedics ("Elyria police"), executed a raid to search the premises ("raid"). At all relevant times, the Elyria police were acting in their individual capacities, within the course and scope of their employment. They were also acting under color and pretense of law, statute, ordinance, regulation, custom, usage, and practice or policy.

12. The purported purpose of the raid was for the Elyria police to search the premises for a suspect, described as a 12-year boy, who was allegedly in possession of a stolen weapon. Yet, the Elyria police frivolously obtained inaccurate information to procure the warrant without any assurances that the suspect was actually at the premises.

13. Courtney and W. P. were at the premises at the time of the raid. In fact, W. P. was in his crib, using a respirator upon which W. P. relied to provide oxygen to his body.

14. Courtney heard a knock on the door. However, before she was able to reach it, the Elyria police did two things simultaneously. First, they crashed through the front door with a battering ram. Second, they extended a pole through the window with a flash bang attached, which shattered the window of the room where W. P. lay sleeping. When the flash bang detonated, it released toxic smoke which consumed the room forcing W. P. to breathe it in and asphyxiate.

15. Courtney attempted to rescue, and comfort, W. P. However, the Elyria police placed her in handcuffs. She pleaded with them to allow her to go to W. P., explaining that he was very ill. Yet, the Elyria police refused to allow her to do so within a reasonable period of time.

16. W. P. was emergently transported to St John's Hospital for treatment as a result of

injuries caused by the flash bang detonation and his inhalation of the resulting toxic smoke. Later that day, W. P. stopped breathing and was rushed to the Pediatric Intensive Care Unit at University Hospitals' Rainbow Babies & Children due to the urgency of his condition. Once there, W. P. was admitted with a diagnosis of Chemical Pneumonitis and required to stay 10 days for treatment. He was subsequently required to undergo exploratory surgery for a ruptured eardrum sustained as a direct and proximate cause of the flash bang and its toxic smoke.

17. The Elyria police acted recklessly, grossly, and/or negligently. Prior to the raid, they knew or should have known that the 12-year-old suspect, for whom they were searching, did not live at the premises. Indeed, they had even been informed of that fact on at least three separate prior occasions. As a result, they obtained an unjustified warrant and unlawfully raided the house.

18. The event permanently scarred, and caused extreme financial hardship to Plaintiffs, which would have been avoided had the Elyria police not acted in such a reckless, gross, and/or negligent manner when obtaining and executing the search warrant. Plaintiffs never posed a risk of any potential threat and had no weapons. Nor were there any threatening items (e.g., firearms) found during the raid and search. Plaintiffs did not have weapons stored at the home and they did not display any items that appeared to be weapons at any time prior to or during the raid.

19. The Elyria police had no justifiable reason to use explosives, such as the flash bang, and the force they deployed at any time during the unlawful search and seizure of Plaintiffs' and their home.

20. Throughout the ordeal, Plaintiffs were stripped of their constitutional rights to remain free from unreasonable search and seizure. They were also subjected to humiliation, as well as the terrifying destruction of the home they were lawfully occupying, due to the Elyria police's reckless, gross, and/or negligent conduct.

21. On January 15, 2024, Defendant Stammitti received a request from Elyria's Safety Director and Elyria Chief of Police, William Pelko, to conduct an administrative review of the search warrant and execution of the search warrant related to the raid. Approximately three weeks later, on February 6, 2024, Pelko sent another letter to the Lorain County Prosecutor, JD Tomlinson. In it, he requested that the Prosecutor's office investigate allegations regarding possible criminal activity in regards to a GoFundMe page established on behalf of Courtney and W. P.

22. On May 8, 2024, Stammitti submitted the completed administrative review to Elyria Mayor, Kevin Brubaker. The review concluded that the search warrant was obtained through the establishment of probable cause and probable cause existed to execute the search warrant.

23. On October 2, 2024, Plaintiffs filed a complaint against Elyria and a number of Elyria police. However, it was not made available to the public since it contained certain personal identifiers. Plaintiffs filed an amended complaint the next day, on October 3, 2024, having removed the personal identifiers. Therefore, the amended complaint was made available to the public.

24. Shortly after the filing of the amended complaint, during its October 2024 term, the Lorain County Grand Jury returned an indictment charging Courtney with the offenses of telecommunications fraud, grand theft, and falsification in a theft offense. However, the indictment was retaliatory and the Grand Jury's findings were premised on false information and false charges brought by Defendants.

25. On November 27, 2024, a warrant for Courtney's arrest was issued. The warrant states that the offenses allegedly began on January 11, 2024 it: *one day after the raid*. The warrant goes on to state that the offenses were supposedly committed through February 29, 2024. Therefore, Defendants did not initiate or conclude an investigation or prosecution of Courtney until over eight months after that date.

26. Courtney was ultimately arrested on May 5, 2025. She was then detained by Defendants. This detention was intentional and unlawful. Her prosecution is now pending.

## COUNT 1
### Retaliation in Violation of the First Amendment

27. Plaintiffs incorporate the preceding paragraphs.

28. Plaintiffs engaged in the protected conduct of exercising their right to free speech by filing a lawsuit against the City of Elyria and Elyria police. Courtney also engaged in protected conduct by speaking to the media.

29. Through the criminal prosecution of Courtney, Defendants took adverse actions against Courtney in a manner that would deter any person of ordinary firmness from engaging in similar protected conduct. Those adverse actions were motivated, at least in part, by the protected conduct and Defendants' desire to avoid undermining the legitimacy of the administrative review and exposing the sham investigation purportedly supporting the basis of that review.

30. Defendants' actions constitute unlawful retaliation. Particularly, in light of the extremely close temporal proximity between the protected conduct and the adverse actions taken against Courtney.

31. At all relevant times, Defendants' acts or omissions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Defendants intended to cause, knew, or should have known that their acts or omissions would cause Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

32. As a direct and proximate result of Defendants' acts or omissions, Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and

degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from Defendants' unlawful acts or omissions.

## COUNT 2
### Conspiracy to Violate Plaintiffs' Civil Rights
### (Section 1983)

33. Plaintiffs incorporate the preceding paragraphs.

34. Defendants conspired to deprive Courtney of her well-established protected constitutional rights set forth above and as follows below.

35. Defendants, along with Elyria and the Elyria police, conspired pursuant to a single plan. That plan involved the intent to discredit Courtney and interfere and negatively affect her potential success in her lawsuit against Elyria and the Elyria police.

36. Defendants, Elyria, and the Elyria police, sought to benefit themselves by promoting the legitimacy of the administrative review and related investigation. They also shared in a general conspiratorial objective since, in addition to the benefits set forth above, Defendants sought to be exonerated from their misconduct and Elyria and the Elyria police would achieve success in Plaintiffs' lawsuit against them.

37. Defendants' actions constitute a conspiracy to violate Courtney's civil rights. In furtherance of that conspiracy, Defendants committed numerous overt, and adverse, actions which caused injuries to Courtney.

38. At all relevant times, Defendants' acts or omissions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Defendants intended to cause, knew, or should have known that their acts or omissions would cause Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency

and can be considered completely intolerable in a civilized community.

39. As a direct and proximate result of Defendants' acts or omissions, Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from Defendants' unlawful acts or omissions.

**COUNT 3**
**False Arrest**
**(Ohio Law)**

40. Plaintiffs incorporate the preceding paragraphs.

41. The acts or omissions of Defendants, Hall, Stammitti, and Lorain County law enforcement personnel, constituted false arrest. In that they falsely and unlawfully arrested and detained her.

42. At all relevant times, Hall, Stammitti, and Lorain County law enforcement personnel, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Commissioners or other applicable Defendants.

43. At all relevant times, the acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel, were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

44. As a direct and proximate result of the acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel, Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel.

## COUNT 4
### Intentional Infliction of Emotional Distress
### (Ohio Law)

45. Plaintiffs incorporate the preceding paragraphs.

46. The acts or omissions of Defendants, Hall, Stammitti, and Lorain County law enforcement personnel, constituted intentional infliction of emotional distress against Courtney. It proximately caused her psychological injury and she suffered serious mental anguish of a nature no reasonable person could be expected to endure.

47. At all relevant times, Defendants, Hall, Stammitti, and Lorain County law enforcement personnel, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Commissioners or other applicable Defendants.

48. At all relevant times, the acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a

civilized community.

49. Hall, Stammitti, and Lorain County law enforcement personnel intended to cause Courtney serious emotional distress or knew or should have known that their actions would result in such serious emotional distress. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

50. As a direct and proximate result of the acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel, Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel.

## COUNT 5
### Defamation Per Se
### (Ohio Law)

51. Plaintiffs incorporate the preceding paragraphs.

52. The acts or omissions of Defendants, Hall, Stammitti, and Lorain County law enforcement personnel, constituted defamation per se.

53. At all relevant times, Defendants, Hall, Stammitti, and Lorain County law enforcement personnel, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Commissioners or other applicable Defendants.

54. At all relevant times, the acts or omissions of Hall, Stammitti, and Lorain County

law enforcement personnel were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

55. Through their actions, Hall, Stammitti, and Lorain County law enforcement personnel caused false criminal charges to be initiated against Courtney. They also published those charges.

56. As a direct and proximate result of the acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel, Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Hall, Stammitti, and Lorain County law enforcement personnel.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor, and against Defendants (jointly and severally), and grant Plaintiffs such legal and equitable relief as may be appropriate by:

1. Ordering Defendants to pay Plaintiffs in excess of $2,000,000 for actual and compensatory damages;

2. Ordering Defendants to pay Plaintiffs in excess of $2,000,000 for general and special damages for emotional distress, humiliation, embarrassment, and anguish;

3. Ordering Defendants to pay Plaintiffs in excess of $1,000,000 for punitive damages so as to deter future intentional, willful, deliberate, reckless, and/or malicious conduct;

4. Ordering Defendants to pay Plaintiffs pre-judgment and post-judgment interest, as provided by law;

5. Ordering Defendants to pay Plaintiffs their costs and reasonable attorneys' fees related to this action;

6. Enjoining Defendants from further engaging in the unlawful conduct described in this Complaint; and

7. Awarding Plaintiffs all other relief the Court considers appropriate, fair, and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable to a jury.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)

Respectfully submitted,

/s/ *Mark W. Biggerman*

| | |
|---|---|
| Mark W. Biggerman (0064092) | Richard T. Herman (0062314) |
| 29325 Chagrin Blvd., Suite 305 | Herman Legal Group, LLC |
| Pepper Pike, Ohio 44122 | 408 West St. Clair Ave., Suite 230 |
| (216) 475-5600 | Cleveland, Ohio 44113 |
| mark@mblegal.com | (216) 696-6170 |
| | richardtmherman@gmail.com |

William A. Carlin (0009144)
CARLIN & CARLIN
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
wcarlinesq@aol.com

*Attorneys for Plaintiffs*