**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Courtney Price, individually, and<br>in her official capacity and next<br>best friend of her son W. P.,<br><br>*Plaintiffs*<br><br>v.<br><br>Lorain County Board of Commissioners,<br><br>and<br><br>Philip R. Stammitti,<br><br>and<br><br>William Pelko,<br><br>and<br><br>Harold Sivert,<br><br>and<br><br>Christopher Pierre,<br><br>*Defendants* | : | Case No. 1:25-cv-2114<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Reuben J. Sheperd<br><br>***Jury Demand Endorsed Hereon*** |

**PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs, complaining of Defendants, allege as follows:

**PARTIES**

1. Plaintiff, Courtney Price ("Plaintiff Courtney" or "Courtney"), is a citizen of the United States. She resided in Elyria, Ohio, and Pikeville, Kentucky

2. Plaintiff, Courtney Price, is also a party in her official capacity and next best friend

of her son, Plaintiff, W. P. (“Plaintiff W. P.” or “W.P.”), a minor. W. P. is also a United States citizen and resided in Elyria, Ohio, and Pikeville, Kentucky, at all relevant times.

3. Defendant, Lorain County Board of Commissioners (“Defendant Commissioners”), is an Ohio Political Subdivision. It is the governing body of Lorain County organized and existing under the laws of the State of Ohio.

4. Defendant, Philip R. Stammitti (“Defendant Stammitti”), is a United States citizen and was the former Sheriff of Lorain County at all relevant times.

5. Defendant, William Pelko (“Defendant Pelko”), is a United States citizen and was the former Police Chief for City of Elyria at all relevant times.

6. Defendant, Harold “Buddy” Sivert (“Defendant Sivert”) is a United States citizen and was an investigator for the Lorain County Prosecutor’s Office at all relevant times.

7. Defendant, Christopher Pierre (“Defendant Pierre”), is a United States citizen and has been a Lorain County Assistant Prosecutor at all relevant times.

## JURISDICTION AND VENUE

8. This action arises under 42 U.S.C. § 1983 (“Section 1983”), the First and Fourth Amendments to the United States Constitution, and Ohio state law.

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

10. Pursuant to 28 U.S.C. § 1391, venue is properly laid in the Northern District of Ohio, Eastern Division at Cleveland, since Defendants reside and/or are located in Lorain County, Ohio. Additionally, the events and omissions giving rise to the claims occurred in Lorain County.

**FACTS**

11. In early January 2024, Courtney and W. P. were residing with Courtney's aunt, Redia Jennings, at 331 Parmely Avenue, Elyria, Ohio ("premises").

12. On January 10, 2024, the City of Elyria Police ("Police") obtained a search warrant for the premises for the purpose of locating firearms, ammunition, and firearm accessories. The warrant also stated that Christopher Shannon was believed to live at the premise. Later that day, at approximately 2:12 PM, the Police executed the search warrant and conducted a forcible entry into the premises ("raid").

13. At the time of the raid, Plaintiffs Courtney and W. P., were inside the Premises. W. P. was sleeping in a bassinet, connected to a respirator that he relied on for oxygen. Courtney heard a knock on the front door. As she was approaching the door, but before she was able to reach it, the Police broke down the door with a battering ram, causing Courtney to scream in fear.

14. Simultaneously, the Police utilized a blunt force device to break one of the lower-level windows of the home. They also detonated a bang pole (flash bang) to shatter the window of the upper-level floor. However, Plaintiff W. P. was sleeping in the room of that upper-level floor. The detonation from the flash bang shattered the window, sending shards of broken glass into the room where W. P. was sleeping. It also released toxic smoke into the room, causing W. P. to breathe it in.

15. The Police removed Plaintiff Courtney from the Premises and handcuffed her. She told them her baby was inside, but they would not allow her to tend to him until sometime later.

16. The Police did not find any firearms, ammunition, or firearm accessories on the Premises. They also did not find Christopher Shannon on the Premises. Remarkably, the Police had already placed him in custody prior to the raid, and it was soon learned that he did not reside

at the Premises.

17. Plaintiff W. P. was emergently transported to the hospital for treatment as a result of injuries caused by the flash bang detonation and his inhalation of the resulting toxic smoke. Later that day, W. P. stopped breathing and was rushed to the pediatric intensive care unit due to the urgency of his condition. Once there, W. P. was admitted with a diagnosis of chemical pneumonitis and required to stay 8 days for treatment. He was subsequently required to undergo exploratory surgery for a ruptured eardrum sustained as a direct and proximate cause of the flash bang and its toxic smoke.

18. The Police acted recklessly, grossly, and/or negligently. Prior to the raid, they knew or should have known that the 12-year-old suspect, for whom they were searching, did not live at the premises. Indeed, they had even been informed of that fact on at least two separate prior occasions. As a result, they obtained an unjustified warrant and unlawfully raided the house.

19. The event permanently scarred, and caused extreme financial hardship to Plaintiffs, which would have been avoided had the Police not acted in such a reckless, gross, and/or negligent manner when obtaining and executing the search warrant. Plaintiffs never posed a risk of any potential threat and had no weapons. Nor were there any threatening items (e.g., firearms) found during the raid and search. Plaintiffs did not have weapons stored at the home and they did not display any items that appeared to be weapons at any time prior to or during the raid.

20. The Police had no justifiable reason to use explosives, such as the flash bang, and the force they deployed at any time during the unlawful search and seizure of Plaintiffs' and their home.

21. Throughout the ordeal, Plaintiffs were stripped of their constitutional rights to remain free from unreasonable search and seizure. They were also subjected to humiliation, as well

as the terrifying destruction of the home they were lawfully occupying, due to the Police's reckless, gross, and/or negligent conduct.

22. Due to the egregious nature of the Police's conduct, the incident quickly caught media attention and public backlash. Courtney was asked to make statements to the media. She also expressed her discontent with the Police on her social media platforms regarding what she and her son had experienced and the damage the Police caused during this unlawful raid.

23. On or about January 12, 2024, Redia Jennings and her daughter, Olivia Jennings, created a GoFundMe Campaign, where they explained what had occurred and asked for "donations to help [Courtney] get new medical supplies, pay medical bills [and] gas and necessities . . ." (the "Campaign"). Redia Jennings was the listed beneficiary of the account, with her bank account being linked to the GoFundMe webpage.

24. For weeks, the Police received negative press and public backlash for their egregious and negligent conduct in executing the raid. So much so, that on January 15, 2024, the Elyria Safety Director, in conjunction with the Elyria Chief of Police, William Pelko, sent an official request to Defendant Stammitti of the Lorain County Sheriff's Office to conduct an administrative review of the search warrant's legality and its execution during the raid. That task was delegated to Major Richard A. Bosley, who, upon information and belief, is not a legal expert.

25. Additionally, on February 6, 2024, Chief Pelko sent another official request to the Lorain County Prosecutor, JD Tomlinson, requesting the Prosecutor's office investigate the GoFundMe Campaign for possible criminal activity. The Prosecutor's office accepted this request and assigned Defendant Sivert to lead the investigation. The investigation lasted until approximately June of 2024. Interestingly, the Prosecutor's office hired Defendant Sivert to only a one-year contract, commencing on January of 2024 and expiring on January of 2025.

26. Elyria Mayor Brubaker and Police Chief Pelko also contributed to the criminal investigation against Courtney. For example the mayor was involved in an investigatory interview with Redia Jennings. For his part, Pelko submitted an affidavit for a search warrant to obtain W. P.'s medical records. The purpose of obtaining these records was a fishing expedition to discover whether or not W. P. had actually suffered injuries as part of the raid. Chief Pelko also arrived at Courtney's home and followed her and W. P. to the hospital during an EMS transport.

27. On May 8, 2024, Stammitti submitted the completed administrative review to Elyria Mayor, Kevin Brubaker. The review concluded that the search warrant was obtained through the establishment of probable cause and probable cause existed to execute the search warrant. Mayor Brubaker subsequently issued a press release reiterating the same.

28. In reality, however, the report contained multiple inaccuracies, omissions, evasive statements, and misapplications of the law. The report was clearly designed to exonerate the City of Elyria. Undoubtedly in anticipation of an expected civil rights lawsuit.

29. On or about October 3, 2024, Plaintiffs filed a complaint in the United States District Court, Northern District of Ohio, against the City of Elyria and numerous members of the Police department (*Price v. City of Elyria*, U.S. Dist. Court No. 1:24-cv-1707), asserting causes of action related to the unlawful raid on the Premises.

30. Then, on November 27, 2024, after Plaintiffs filed the complaint in that case, the Lorain County Prosecutor's Office presented Defendant Sivert's investigation to a Lorain County Grand Jury and returned a criminal indictment against Courtney, charging her with the following: Count 1, Telecommunications Fraud, in violation of Ohio Revised Code § 2913.05, a felony of the third degree; Count 2, Grand Theft, in violation of Ohio Revised Code § 2913.02(A)(3), a felony of the fourth degree; and Count 3, Falsification in a Theft Offense, in violation of Ohio Revised

Code § 2921.13(A)(9), a felony of the fourth degree.

31. To obtain this indictment, Defendant Sivert, and the Lorain County Prosecutors' office, alleged that Courtney created the GoFundMe Campaign, lied about the Police's conduct and W.P.'s injuries, and did so for the purpose of defrauding citizens into giving her money. None of this was true. Rather, the indictment was retaliatory and the Grand Jury's findings were premised on false information brought by Defendants.

32. In reality, both the creator and beneficiary of the GoFundMe Campaign, Redia Jennings, was not included in the indictment. It was later discovered Redia Jennings met with Mayor Brubaker and Defendant Sivert to assist in the criminal investigation against Courtney. During the meeting, Redia Jennings explicitly admitted that she misused funds from the GoFundMe Campaign; however, Defendant Sivert assured her that she would be protected from criminal prosecution. It is worth further noting that Redia Jennings is also not a party to the complaint in Case No. 1:24-cv-1707.

33. On November 27, 2024, a warrant for Courtney's arrest was issued. The warrant states that the offenses allegedly began on January 11, 2024 it: *one day after the raid*. The warrant goes on to state that the offenses were supposedly committed through February 29, 2024. Therefore, Defendants did not initiate or conclude an investigation or prosecution of Courtney until over eight months after that date.

34. In April 2025, a Lorain assistant prosecutor contacted Plaintiffs' counsel and proposed that, if Plaintiff Courtney was willing to voluntarily come to the Lorain County's Sheriff's Office and accept service regarding the criminal charges against her, the prosecution would release her on a personal bond.

35. Plaintiff Courtney presented herself at the Sheriff's Office on May 5, 2025.

However, what happened next was far from friendly or amicable. It turned out that she did not receive any favorable treatment despite making the drive from Kentucky all the way to Ohio.

36. After arriving, Plaintiff Courtney was arrested, then forced to strip naked. Following that incredible humiliation, she was instructed to wear jail clothes and placed in a jail cell for four hours before ultimately being released.

**COUNT 1**
***Retaliation (Section 1983)***
**(Against Defendants, Commissioners, Stammitti, Pelko, and Sivert)**

37. Plaintiffs incorporate the preceding paragraphs.

38. Plaintiff Courtney engaged in constitutionally protected speech when she spoke out to the media and against the Police. As described above, this included criticizing them for conducting forcible entries into houses where suspects do not live. Engaging in such speech is protected under the First Amendment of the United States Constitution.

39. Plaintiff Courtney's filing of a civil rights lawsuit, as described above, also constituted constitutionally protected conduct. Participation in such a lawsuit to vindicate her legal rights and her access to the courts are protected activities under the First Amendment of the United States Constitution.

40. Further, Plaintiff Courtney has a guaranteed right to be free from criminal prosecution without probable cause pursuant to the Fourth Amendment of the United States Constitution.

41. Yet, Defendants, Commissioners, Stammitti, Pelko, and Sivert, subjected Plaintiff Courtney to a wrongful investigation, wrongful and malicious prosecution, humiliating treatment upon presenting herself for arrest.

42. These adverse actions, taken against Plaintiff Courtney, in a manner that would

unquestionably deter a person of ordinary firmness from engaging in similar protected conduct.

43. Furthermore, there is a causal connection between the protected conduct and those adverse actions. First, in light of the extremely close temporal proximity between the protected conduct and the adverse actions taken against Plaintiff Courtney. Second, the actions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, make it clear that, had Plaintiff Courtney not engaged in protected conduct, they would have had no motivation to engage in retaliation. Thus, the adverse actions were motivated, at least in part, by the protected conduct.

44. At all relevant times, the acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Those Defendants intended to cause, knew, or should have known that their acts or omissions would cause Plaintiff Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

45. As a direct and proximate result of the acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from Defendants' unlawful acts or omissions.

## COUNT 2
### *Conspiracy (Section 1983)*
### (Against Defendants, Commissioners, Stammitti, Pelko, and Sivert)

46. Plaintiffs incorporate the preceding paragraphs.

47. As described above, the conduct of Defendants, Commissioners, Stammitti, Pelko,

and Sivert, demonstrate a single plan existed among them and that they all shared in the general conspiratorial objective to deprive Plaintiff Courtney of her constitutional rights of free speech, vindication of her legal rights, access to the courts, the right to petition the government for a redress of grievances, and/or to be free from malicious criminal prosecution.

48. The actions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, constituted a conspiracy to violate Plaintiff Courtney's civil rights. In furtherance of that conspiracy, those Defendants committed the numerous overt acts described above.

49. As a direct and proximate result of Defendants' acts or omissions, Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from Defendants' unlawful acts or omissions.

**COUNT 3**
***Malicious Prosecution (Section 1983)***
**(Against Defendant Sivert)**

50. Plaintiffs incorporate the preceding paragraphs.

51. A criminal prosecution was initiated against Plaintiff Courtney. Defendant Sivert made, influenced, or participated in the decision to prosecute.

52. There was no probable cause for that criminal prosecution and the charges were terminated in her favor since she was acquitted by a jury of her peers.

53. Plaintiff Courtney suffered a deprivation of liberty.

54. As a direct and proximate result of Defendants' acts or omissions, Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a

deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from Defendants' unlawful acts or omissions.

**COUNT 4**
***Malicious Prosecution (Ohio Law)***
**(Against Defendant Sivert)**

55. Plaintiffs incorporate the preceding paragraphs.

56. A criminal prosecution was initiated against Plaintiff Courtney. Defendant Sivert made, influenced, or participated in the decision to prosecute.

57. There was no probable cause for that criminal prosecution and the charges were terminated in her favor since she was acquitted by a jury of her peers.

58. At all relevant times, Defendants, Commissioners, Stammitti, Pelko, and Sivert, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Commissioners or other applicable Defendants.

59. At all relevant times, the acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Plaintiff Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

60. Defendants, Commissioners, Stammitti, Pelko, and Sivert, intended to cause Plaintiff Courtney serious emotional distress or knew or should have known that their actions

would result in such serious emotional distress. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

61. As a direct and proximate result of the acts or omissions of Plaintiffs etc. Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert.

**COUNT 5**
***Intentional Infliction of Emotional Distress (Ohio Law)***
**(Against Defendants, Commissioners, Stammitti, Pelko, and Sivert)**

62. Plaintiffs incorporate the preceding paragraphs.

63. The acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, constituted intentional infliction of emotional distress against Plaintiff Courtney. It proximately caused her psychological injury and she suffered serious mental anguish of a nature no reasonable person could be expected to endure.

64. At all relevant times, Defendants, Commissioners, Stammitti, Pelko, and Sivert, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Commissioners or other applicable Defendants.

65. At all relevant times, the acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, were taken with malicious purpose, in bad faith, or in a wanton or

reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Plaintiff Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

66. Defendants, Commissioners, Stammitti, Pelko, and Sivert, intended to cause Plaintiff Courtney serious emotional distress or knew or should have known that their actions would result in such serious emotional distress. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

67. As a direct and proximate result of the acts or omissions of Plaintiffs etc. Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert.

**COUNT 6**
***Defamation Per Se (Ohio Law)***
**(Against All Defendants)**

68. Plaintiffs incorporate the preceding paragraphs.

69. All Defendants made false statements about Plaintiff Courtney as described above.

70. This includes (but is not limited to) Defendant Pierre's statement to the media that Plaintiff Courtney lied, wrote lies on a public page, and used money raised for her son for her own personal expenses.

71. This, and all of the other false statements were published without privilege to third parties.

72. The Defendants' acts or omissions constituted defamation per se.

73. At all relevant times, the Defendants were all acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as employees of the Defendant Commissioners or other applicable Defendants.

74. At all relevant times, the acts or omissions of all Defendants were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. They intended to cause, knew, or should have known that their acts or omissions would cause Plaintiff Courtney to suffer damages. In fact, their conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

75. Through their actions, all Defendants caused false criminal charges to be initiated against Plaintiff Courtney and published those charges. Yet, those charges were terminated in her favor since she was acquitted by a jury of her peers.

76. As a direct and proximate result of the acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert, Plaintiff Courtney suffered injuries (both physical and emotional) and damages. She also suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. She further suffered emotional distress and time and money in endeavoring to protect herself from the unlawful acts or omissions of Defendants, Commissioners, Stammitti, Pelko, and Sivert.

**COUNT 8**
***Loss of Parental Consortium (Ohio Law)***
**(Against All Defendants)**

77. Plaintiffs incorporate the preceding paragraphs.

78. At all relevant times, Plaintiff, W. P., was, and continues to be, a minor child of Plaintiff Courtney.

79. As a direct and proximate result of Defendants' extreme, outrageous, and intentional conduct, Plaintiff Courtney suffered, and continues to suffer, severe emotional distress, psychological trauma, and related physical manifestations as set forth in in this complaint.

80. Prior to the Defendants' unlawful and/or tortious conduct, Plaintiff Courtney was fully capable of, and did, perform her duties as a mother, providing Plaintiff W. P. with maternal care, emotional support, guidance, and counsel.

81. Due to the severe emotional and psychological distress inflicted upon Plaintiff Courtney by Defendants, her ability to parent and maintain the parent-child relationship has been severely and materially impaired.

82. As a direct and proximate result of the Defendants' unlawful and/or tortious conduct, Plaintiff W. P. has been, and will in the future be, deprived of the services, society, companionship, affection, comfort, guidance, counsel, and maternal care of their mother.

83. As a direct and proximate result of the foregoing, Plaintiff W. P. has sustained an independent, compensable loss of parental consortium under Ohio law, resulting in damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor, and against Defendants (jointly and severally), and grant Plaintiffs such legal and equitable relief as may be appropriate by:

1. Ordering Defendants to pay Plaintiffs in excess of $2,000,000 for actual and compensatory damages;
2. Ordering Defendants to pay Plaintiffs in excess of $2,000,000 for general and special damages for emotional distress, humiliation, embarrassment, and anguish;
3. Ordering Defendants to pay Plaintiffs in excess of $1,000,000 for punitive damages so as to deter future intentional, willful, deliberate, reckless, and/or malicious conduct;
4. Ordering Defendants to pay Plaintiffs pre-judgment and post-judgment interest, as provided by law;
5. Ordering Defendants to pay Plaintiffs their costs and reasonable attorneys' fees related to this action;
6. Enjoining Defendants from further engaging in the unlawful conduct described in this Amended Complaint; and
7. Awarding Plaintiffs all other relief the Court considers appropriate, fair, and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable to a jury.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)

Respectfully submitted,

/s/ *Mark W. Biggerman*

Mark W. Biggerman (0064092)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: (216) 475-5600
Fax: (216) 831-9526
Email: mark@mblegal.com

William A. Carlin (0009144)
CARLIN & CARLIN
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: (216) 831-4935
Fax: (216) 831-9526
Email: wcarlinesq@aol.com

Amir Gholizadeh (0095672)
Gholizadeh Law
1220 West 6th Street (Ste. 303)
Cleveland, Ohio 44113
Phone: (216) 645-7245
Fax: (216) 284-9611
Email: amirglaw@gmail.com

Richard T. Herman (0062314)
Herman Legal Group, LLC
408 West St. Clair Ave., Suite 230
Cleveland, Ohio 44113
Phone: (216) 696-6170
Fax: (216) 696-0104
Email: richardtmherman@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 11, 2026, a copy of Plaintiffs' amended complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)